2013 BNH 017          Note: this is an unreported opinion.  Refer to LBR 1050-1 regarding citation.

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                      Bk. No. 12-13248-BAH
                                                                                             Chapter 11
Robert S. Turner,
          Debtor

*Robert L. O'Brien, Esq.*
*New Boston, New Hampshire*
*Attorney for Debtor*

*Rian K. Vernon, Esq.*
*Harmon Law Offices*
*Newton Highlands, Massachusetts*
*Attorney for Residential Credit Solutions, Inc.*

## MEMORANDUM OPINION

### I. INTRODUCTION

The Court has before it Debtor Robert S. Turner's ("Turner") Amended Chapter 11 Plan of Reorganization dated May 8, 2013, as amended in open court on July 17, 2013 (Doc. No. 67) (the "Plan"). On June 28, 2013, creditor Residential Credit Solutions, Inc. ("Residential Credit") filed an objection to the confirmation of the Plan (Doc. No. 78) (the "Objection"). Residential Credit objects to the interest rate the Plan proposes to apply to the first mortgage on Turner's property at 7 Hilltop Drive, Moultonborough, New Hampshire. On July 17, 2013, the Court held a hearing on confirmation of the Plan. At the conclusion of the hearing, the Court found that all of the requirements for confirmation were met, except for the treatment of Class 2C, Residential Credit's claim. The Court took under advisement the issue of whether the proposed interest rate applied to Residential Credit's secured claim is adequate to satisfy the

cramdown requirements of 11 U.S.C. § 1129(b) and to allow the Plan to be confirmed over Residential Credit's objection.

The Court finds that the Plan's proposed interest rate of 5%[1] per annum is sufficient to satisfy the cramdown requirements of § 1129(b), using the formula approach articulated in <u>Till v. SCS Credit Corp.</u>, 541 U.S. 465 (2004), and considering the risk factors applicable to the Debtor's Plan.  For the reasons set forth in this opinion, the Court will confirm the Plan, with the proposed rate of interest for the treatment of Class 2C.

The Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a) and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II. FACTUAL BACKGROUND**

On October 23, 2012, Turner filed for protection under chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code").  Turner owns a number of real properties, including a non-income producing second home located at 7 Hilltop Drive, Moultonborough, New Hampshire (the "Moultonborough Property") with a fair market value of $230,000.  The Moultonborough Property is subject to a fully secured first mortgage held by Residential Credit.  As of the date the petition was filed, Residential Credit had a secured claim in the amount of $157,249.23, with a contract interest rate of 6.5% per annum and a monthly payment of $1,253.22.

On May 17, 2013, Turner filed the Amended Disclosure Statement and Amended Plan dated May 8, 2013 (Doc. Nos. 66 & 67).  On June 6, 2013, the Court approved the Amended Disclosure Statement.  The Plan provides that Turner will retain all of his real properties, and

---

[1]  As discussed below, Turner amended the Plan at the confirmation hearing to increase the proposed interest rate from 4% to 5%.

2

he will make plan payments from rental income generated by his other real properties and from his income from his dental lab business.[2] It further provides that for the non-homestead properties, including the Moultonborough Property, the amounts secured by some of the mortgages will be reduced to the fair market value of the properties, the terms of most of the mortgages will be extended, and the interest rates will be "crammed down" to 4% from the contract rate.

Under the Plan, Residential Credit's Class 2C claim is allowed in the full asserted amount of $157,249.23. However, Class 2C is impaired. The Plan extends the term of the mortgage by nine years, to thirty years from the Effective Date. Most contentiously, the Plan also proposes to lower the interest rate for the remainder of the term to 4% per annum.[3] All of the covenants in the existing loan documents will remain intact under the Plan.

In the Objection, Residential Credit argues against the proposed 4% interest rate, contending that that rate is not reasonable due to the risks surrounding the Plan. Residential Credit argues that under the "formula approach" used by the Supreme Court in Till, this Court should adjust the national prime interest rate upwards to reflect the risk to the creditor. Residential Credit argues that "several percentage points should be added" to the national prime interest rate of 3.25%, and identifies four risk factors it believes should be taken into account when determining the appropriate interest rate. Those four risk factors are: (1) Turner has extended the term of the loan to 30 years; (2) Turner has filed for chapter 11 protection; (3)

---

[2] The Debtor earns income operating a lab that supplies dental bridgework to local dentists. Disclosure Statement § II(a), Doc. No. 66.
[3] See supra n.1

3

the Moultonborough Property is not Turner's primary residence, but a second home; and (4) Turner has defaulted on his monthly payments postpetition.[4]  Obj. ¶ 4.

On July 16, 2013, the day before the confirmation hearing, Turner filed a proposed confirmation order that included the following language:

> Regarding the objection to confirmation of the plan filed by [Residential Credit] in the Class 2C [sic], the Court finds that the Debtor has substantial equity in the realty that secures the mortgage of [Residential Credit]; that Debtor represents that he has made all payments due on this obligation and that the risk of loss to Creditor [Residential Credit] is minimal.  Accordingly, the objection is overruled.  The rate of interest on Class 2C shall be 5%, all of other terms [sic] of the plan shall remain the same.

Proposed Conf. Order ¶ 23, Doc. No. 83.[5]  No other explanation was filed with the Proposed Confirmation Order.  At the confirmation hearing, the Court deemed the Plan to have been amended to provide for a 5% interest rate for Class 2C.

At the hearing on the confirmation of the Plan on July 17, 2013, the parties agreed that there is no efficient market that applied to the loan, and therefore the appropriate analysis for determining the cramdown interest rate is the <u>Till</u> formula approach. The parties differed in their proposed upward adjustments from the prime interest rate, stipulated to be 3.25% as of the date of the hearing.  The Debtor proposed an interest rate of 5%, or an upward adjustment of 1.75%.  In support of his proposed rate, Turner argued that he has been current on the Moultonborough Property mortgage payments and that, using the appraised value and the claim amount from Residential Credit's Proof of Claim, there was still $75,000 in equity in the Property.  Residential Credit proposed an interest rate of 6.25% (which is also the contract rate), or an upward adjustment of 3% over the prime rate.  In support of its proposed rate,

---

[4] With respect to the postpetition default, Residential Credit explained at the hearing that at the time of the Objection, the Debtor was in default, but that default had since been cured and Turner was current as of the hearing.

[5] The Proposed Confirmation Order refers to Residential Credit as "Resolution Credit Solutions."

4

Residential Credit argued that it added one percentage point each for the Debtor having filed for chapter 11 protection, the extension of the loan term, and for the Moultonborough Property being a non-income producing second home.  After each party discussed their proposed interest rate, the Court advised the parties that it would wait to hear whether the offer of 5% interest was acceptable to Residential Credit and took the matter under advisement. [6]

### III.  DISCUSSION

To confirm a plan of reorganization, a debtor must either satisfy all of the requirements of 11 U.S.C. § 1129(a) or, where an impaired creditor rejects the plan of reorganization, satisfy the requirements of section 1129(b).  Under section 1129(b)(1), a plan can be confirmed over the objection of an impaired class of secured claims if the plan does not discriminate unfairly and is fair and equitable.  A plan is fair and equitable as to a class of secured claim holders if the holders of such claims retain the liens securing the claims to the extent of the allowed claim amount and receive on account of such claims deferred cash payments totaling at least the allowed amount of the claims, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.  § 1129(b)(2)(A)(i)(I) & (II).  Simply stated, a debtor can restructure a secured creditor's debt over the creditor's objection as long as the creditor retains its lien and receives deferred cash payments equal to the present value of its secured claim as of the effective date of the plan.

"Present value" is the current value of a future payment, and takes into account various risks that may arise between the present and future payment dates.  To compensate the creditor, a rate of interest, i.e., the discount rate, is computed to take into account the time value of

---

[6] At the confirmation hearing, counsel for Residential Credit advised the Court that she was aware of the adjusted rate, but had not received authorization from Residential Credit to withdraw her objection.  The Court asked counsel to advise the Court whether the offer was acceptable, and concluded the hearing by telling the parties that it would wait to hear from Residential Credit.  In the absence of a response being filed, the Court assumes that the Debtor's proposed rate adjustment was not acceptable to Residential Credit.

money and the risk or uncertainty of the anticipated payments.  See Till, 541 U.S. at 474 ("A debtor's promise of future payment is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment.").

The appropriate interest rate used in a cramdown loan (the "cramdown interest rate") is a factual determination made on a case-by-case basis.  In re Moultonborough Hotel Grp., LLC, 2012 BNH 006, at *11, aff'd sub nom. ROK Builders, LLC v. 2010-1 SFG Venture, LLC, 2013 DNH 095 (D.N.H. July 16, 2013).  In many chapter 11 cases, courts have followed the approach set out in Bank of Montreal v. Official Committee of Unsecured Creditors (In re American HomePatient, Inc.), 420 F.3d 559 (6th Cir. 2005), namely first to identify whether there is an efficient market from which to take the appropriate interest rate, and if not, then progress to the Till formula approach.  The burden of proof on any upward adjustment to the prime rate is on the creditor.  Till, 541 U.S. at 479-80.

In Till, the Supreme Court articulated an approach to cramdown interest rates in chapter 13 cases that has since been applied to cases under chapter 11.  Id.; Bank of Montreal, 420 F.3d 559 (6th Cir. 2005); In re SW Boston Hotel Venture, LLC, 460 B.R. 38, 54-55 (Bankr. D. Mass. 2011), vacated on other grounds, BAP No. 11-087, 2012 WL 4513869 (B.A.P. 1st Cir. Oct. 1, 2012).  Dubbed the "formula approach," the Supreme Court began by looking at the national prime rate, "which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default."  Till, 541 U.S. at 479.  The Court then adjusted the interest rate upward to account for a bankrupt debtor's greater risk of nonpayment, looking at factors including the circumstances of the estate, the

nature of the security, and the duration and feasibility of the reorganization plan, noting that such adjustments usually range between 1-3%.  Id. at 479-80.  Other courts have included factors such as the financial condition of the debtor at the time of confirmation, the loan-to-value ratio, the value of the collateral, the term of the proposed loan, the debt service coverage ratio, and the quality of any guarantors.  See SW Boston Hotel, 460 B.R. at 54-55; Moultonborough, 2012 BNH 006, at *12.

Here, the parties have agreed that there is no efficient market and that the Till approach should be used.  The parties have stipulated that the prime interest rate as of the date of the hearing is 3.25%.  Turner has proposed an upward adjustment of 1.75%.  Residential Credit has proposed an upward adjustment of 3%.  The Court finds that the Debtor's proposed rate contains an appropriate upward adjustment, and is an appropriate cramdown interest rate.

### A. Status as a Debtor

Both in the Objection and at the hearing, Residential Credit cited to Turner's status as a chapter 11 debtor as a reason for an upward adjustment of 1% over the prime rate.  Bankruptcy has been cited by several courts as a reason to adjust the cramdown interest rate, including the Till court.  In Till, the Court stated "Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach requires a bankruptcy court to adjust the prime rate accordingly."  Till, 541 U.S. at 479.  Even where a creditor had almost a 2 to 1 loan-to-value ratio with full payment after a year, a court found that a nominal adjustment of 1% over prime was appropriate.  In re Cantwell, 336 B.R. 688, 690 (Bankr. D.N.J. 2006) (finding that the risk of nonpayment was negligible, but still adjusting the prime rate upwards by 1%).

The Court finds that some risk of nonpayment is present here, as in all bankruptcies, given the financial difficulties that result in an individual filing for bankruptcy protection. Further, the requirement that the Debtor devote all of his disposable income to the plan over the next five years means that there will be no surplus income to devote to preserving or maintaining the property—at least during the duration of the Plan.

### B. Extension of Loan Term

In the Objection and at the hearing, Residential Credit explained that it increased the proposed interest rate by one additional point because Turner proposed to extend the term of the mortgage to 30 years from the effective date of the Plan. Extension of the loan term has been cited by both the Till Court and others as a reason to adjust the cramdown interest rate. The reasoning behind the Till formula approach is to compensate creditors for the increased risk of nonpayment over a longer and/or more uncertain period. Here, the original thirty-year mortgage matures on November 1, 2034. The Plan proposes to extend the term so that the mortgage will mature thirty years from the Effective Date, or in 2043. While there is inherent uncertainty in any term of years, the Court finds that there is no significant increase in the amount of risk by extending the term of the loan by nine years.

### C. Nature of Property

At the hearing, Residential Credit contended that one of its reasons for adjusting the cramdown interest rate upwards by another percentage point was that the Moultonborough Property is Turner's non-income producing second home. Residential Credit argues that because the Property is not the Debtor's principal residence, it may not receive the same attention to its condition, e.g., needed maintenance or repairs. Further, Residential Credit argues that because there is no income from the Moultonborough Property, there is a

heightened risk of nonpayment.  Turner argued that although the property was non-income producing, there is no risk to the mortgagee because the Debtor's income from the dental lab is steady.

Courts have considered the nature and value of collateral when determining an appropriate upward adjustment to the prime rate.  Factors such as a small equity cushion, the value of the collateral, and the likelihood of the collateral depreciating over the repayment term are taken into account in determining the cramdown rate.  Here, the Moultonborough Property has a fair market value of $230,000 based on the appraisal done by Turner and agreed to by Residential Credit.  Residential Credit's claim is $157,249.23, leaving an equity cushion of approximately $72,750.   There are no other claims secured by the Moultonborough Property.  It is unlikely, though not impossible, that the Property will decrease in value by $73,000 over the next thirty years.  However, some risk adjustment seems appropriate for the risks inherent in holding a long term mortgage on the reorganized Debtor's second home.

Taking into account all three of the factors cited by Residential Credit, the Court finds that there is some risk to the creditor that requires a risk adjustment.  However, the Court finds that Residential Credit has not met its burden to demonstrate that: the Debtor's disposable income being unavailable to maintain or improve the Moultonborough Property; the extension of the loan term by nine years; and the non-income producing nature of the property is sufficient to justify an upwards adjustment of three percentage points over the prime rate.  No evidence was presented at the July 17, 2013 hearing that demonstrated the Debtor's situation constitutes a higher than average risk of nonpayment nor did any expert testify as to the appropriateness of a 3% increase over the prime rate.  Therefore, because some adjustment is necessary, but no specific rate was shown to be appropriate by Residential Credit, the Court

finds that the Debtor's proposed upward adjustment of 1.75% over the national prime interest rate of 3.25% is both unrebutted and appropriate.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court finds that the appropriate interest rate for Residential Credit's secured claim in Class 2C is 5%. The Court concludes that the Plan can be confirmed at the proposed cramdown interest rate of 5%.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   November 27, 2013            /s/ Bruce A. Harwood
                                     Bruce A. Harwood
                                     Chief Bankruptcy Judge